Lessee of SAMUEL HYDE *against* WILLIAM TORRENCE.

The certificate of Virginia commissioners is not conclusive evidence against a Pennsylvania claimant, but may be controverted.

EJECTMENT for 318 acres of land in Whiteley creek.

The plaintiff claimed the premises, under an early improvement made by Thomas Provence, which originated in 1767, was continued down until 1783, without interruption.   On the 8th May 1782, he conveyed to Aaron Jenkins in consideration of 200*l*. who leased to Joseph Ross, under the yearly rent of 150 bushels of corn ; and the tenant afterwards improperly permitted Martin Harden the son of defendant's landlord, to come into the possession on his receiving a bond of indemnification.   On the 26th July 1783, Jenkins conveyed to

the lessor of the plaintiff in consideration of 300*l*. and the latter on the 24th November 1789, obtained a warrant for 200 acres, including Provence's improvement, whereon interest was to commence from the 1st March 1770, but got no survey.

The defendant as tenant to John Harden, claimed under two titles. 1st. An application of John Husk for 300 acres on the west side of Monongahela at the mouth of Big White Lick creek, dated 13th June 1769, a deed from Husk to Harden, in consideration of 50*l*. dated 20th April 1783, and a survey of 222½ acres made on the 18th July following. 2d. A certificate of the Virginia commissioners, that Edward Arsken is "entitled to 400 acres on Monongahela river, on the mouth of Whiteley creek, to include the settlement and improvement whereon Thomas Provence lives, made in 1767," dated 9th February 1780, which was regularly entered with the surveyor of the county on the 7th March following, and a conveyance from Arsken to Harden, dated 20th January 1783 in consideration of 200*l*.

The plaintiff offered two depositions in evidence taken in pursuance of a rule of court, showing that Arsken was no settler under the Virginia law of 3d May 1779, §§ 4, 5, "by making a crop of corn or residing on the land for one year before the 1st January 1778," and that if he asserted himself as such to the commissioners, he was guilty of misrepresentation and gross deception, which would have been examinable by the Chancellor of Virginia either as a fraud or trust. But on the face of the certificate it would rather appear, that Arsken did not claim under a settlement made by himself, or others for him, but would avail himself of the improvement and settlement made by Provence in 1767.

This testimony was opposed by the defendant's counsel. The certificate is conclusive evidence of the facts which it contains, and cannot be impugned or contradicted by any proof, consistently with the solemn compact between the two states. It must be considered as the judgment of a court of justice, acting on a subject within its jurisdiction. The laws of Virginia must govern. It must be presumed that the acts of the commissioners were rightfully done, and that they did not exceed their authority. Their duty was to adjust the claims of settlers, and it is absurd to suppose they would give a certificate to any one, without previously determining that he was a settler. If Provence intended to controvert the truth of the certificate, he might have prosecuted his claim by appeal to the general court before the 1st December 1780, § 9. In no other way, could the certificate be impugned. It is admitted that an elder or prior

right under Pennsylvania may be opposed to it, but none such exists here. After the 1st December 1780, the certificate could not be controverted in Virginia by the laws of that state; nor in Pennsylvania, after the compact. Provence did not prosecute his right before the Virginia commissioners, nor by appeal to the general court; and he cannot set up a title under his improvements begun before the treaty at fort Stanwix, on the 4th November 1768.

By the court. Is a Virginia certificate undeniable evidence of the facts set forth in it, or is it competent to a claimant under this state to examine into the merits of such certificate? This is the mere abstract question, and in the determination thereof we feel ourselves bound to pay the most sacred regard to the compact between the two states.

We think the point has already been resolved in this court in Smith's lessee *v.* Brown, at Uniontown May assizes 1795. "Between claimants under Virginia, the certificate of the commissioners is conclusive evidence; but not where one of the parties claims under Pennsylvania." We apprehend, this must have been the clear intention of the contracting states. A Pennsylvania claimant is at liberty to show fraud, mistake or a trust. Suppose a certificate stating a party to have made a settlement in a particular year, and it would be shown he did not come in from Europe till after the 1st January 1778, and that a title under this state did accrue before his arrival, what good reason can be assigned, why these facts should not be received in evidence.

The operation of the certificate necessarily must be, that *primâ facie* the facts contained in it shall be, deemed true, but not undeniably so. But it has been said, that Provence should have gone before the Virginia commissioners, or have appealed to the general court of that commonwealth. This cannot reasonably be insisted on, as to a person asserting a different jurisdiction! Besides, how does it appear that he had notice of Arsken's application for the certificate, or of its being granted to him? This was *res inter alios acta,* and a judgment affects only parties and privies.

Our opinion on the present point is confined to the defendant's Virginia title. The plaintiff sets up no claim under Virginia. We adhere to the opinion delivered yesterday, that the plaintiff cannot found his pretensions to the land, under the laws or customs of Pennsylvania by any improvements made thereon before the 4th November 1768. But here his settlement has been continued peaceably down until 1783, when he was stripped of possession by a trick prac-

ticed on his tenant. · Opposed merely to the defendant's Virginia certificate, if there really was no settlement made by Arsken, his improvements and peaceable possession ought to prevail.

Whether the application of Husk calls for the lands with clearness and precision, whether it has been abandoned, or the not obtaining a survey thereon until 1783 can rationally be accounted for under the circumstances of the country resulting from a conflict of jurisdictions, are matters of fact to be determined by the jury, but thereon the verdict ultimately depends.

Verdict for the plaintiff.

Mr. Brackenridge, *pro quer.*   Mr. Woods, *pro def.*